**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 1, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FEDERAL TRADE COMMISSION;
UTAH DIVISION OF CONSUMER
PROTECTION,

     Plaintiffs,

v.

ZURIXX; CARLSON DEVELOPMENT
GROUP UTAH; CJ SEMINAR
HOLDINGS; ZURIXX FINANCIAL
UTAH; CHRISTOPHER A. CANNON;
JAMES M. CARLSON; JEFFREY D.
SPANGLER; BRAND MANAGEMENT
HOLDINGS; CAC INVESTMENT
VENTURES; CARLSON
DEVELOPMENT GROUP PUERTO
RICO; DORADO MARKETING AND
MANAGEMENT; JSS INVESTMENT
VENTURES; JSS TRUST; ZURIXX
FINANCIAL PUERTO RICO; GERALD
D. SPANGLER,

     Defendants.

------------------------------

DAVID K. BROADBENT,

     Receiver - Appellee,

v.

DAVID EFRON; EFRON DORADO SE,

     Interested Parties - Appellants.

No. 20-4090

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:19-CV-00713-DAK-DAO)**

_____

Submitted on the briefs:[*]

David Efron, San Juan, Puerto Rico, for Appellants.

Doyle S. Byers and Cory A. Talbot, Holland & Hart LLP, Salt Lake City, Utah,
for Appellee.

_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE** and **CARSON**, Circuit Judges.

_____

**CARSON**, Circuit Judge.

_____

David Efron and Efron Dorado SE (collectively Efron) appeal a civil contempt

order entered by the district court for violating its preliminary injunction.  Because the

contempt order was a non-final decision, we dismiss this appeal for lack of jurisdiction.[1]

I

This litigation began when the Federal Trade Commission and the Utah Division

of Consumer Protection filed a complaint in the United States District Court for the

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.

[1] Although Efron is not a party to the proceedings below, "a nonparty may
generally appeal an order holding him in civil contempt," *Concorde Res., Inc. v.
Woosley (In re Woosley)*, 855 F.2d 687, 688 (10th Cir. 1988) (internal quotation

2

District of Utah against Zurixx, LLC and related entities.  The complaint alleged Zurixx

marketed and sold deceptive real-estate investment products in violation of the Federal

Trade Commission Act, 15 U.S.C. §§ 41-58, and the Utah Consumer Sales Practices Act,

Utah Code §§ 13-11-1 to -23, among other things.  The district court entered a stipulated

preliminary injunction, enjoining Zurixx from continuing its business activities and

freezing its assets wherever located.  The injunction also directed any person or business

with actual knowledge of the injunction to preserve any of Zurixx's assets in its

possession, and it prohibited any such person or business from transferring those assets.

The order also appointed a receiver to "[t]ake exclusive custody, control, and possession

of all [a]ssets and [d]ocuments of, or in the possession, custody, or under control of, any

[Zurixx] Entity, wherever situated."  Aplt. App. at 17; *see also* 28 U.S.C. § 754 ("A

receiver appointed in any civil action or proceeding involving property, real, personal or

mixed, situated in different districts shall . . . be vested with complete jurisdiction and

control of all such property with the right to take possession thereof.").

A week later, the receiver filed a copy of the complaint and injunction in federal

court in Puerto Rico, where Zurixx leased office space from Efron.  The office contained

Zurixx's computers, furniture, and other assets.  The receiver also notified Efron of the

receivership and gave him actual notice of the injunction.  Although Efron at first

allowed the receiver access to the office to recover computers and files, he later denied

---

marks omitted).  We discuss the effect of Efron's status as a nonparty more
thoroughly below.

access to remove the remaining assets and initiated eviction proceedings against Zurixx in a Puerto Rico court.

Given these events, the receiver moved the district court in Utah for an order holding Efron in contempt of court for violating the injunction. In response, Efron claimed the assets belonged to him under his lease agreement with Zurixx. About seven months later, after a full round of briefing, the district court granted the motion and held Efron in contempt of court for violating the injunction. The contempt order directed Efron "(1) to allow the Receiver and his representatives access to the office to recover and remove Zurixx's assets or (2) to compensate the Receiver for the value of those assets that Efron . . . took or otherwise disposed of in violation of the Injunction." Aplt. App. at 154-55. The order also provided that if Efron failed to comply with the contempt order within thirty days, he would be required "to pay the Receiver's legal fees in connection with the [contempt] motion." *Id.* at 155.

Efron asked the district court to reconsider its contempt order, insisting that under his lease with Zurixx, the furniture, fixtures, and equipment in the office belonged to him and that the receiver's efforts to recover the assets were an unconstitutional taking. Efron filed a notice of appeal from the contempt order before the court ruled on his motion for reconsideration. The court later denied reconsideration, but Efron did not amend his notice of appeal to include the ruling on reconsideration. Proceedings were ongoing in the district court.

## II

We first consider the scope of this appeal. Efron first suggests he is appealing from the district court's October 20, 2020, denial of reconsideration. *See* Aplt. Br. at 1 ("The District Court entered the final decision from which this appeal is filed on October 20, 2020[,] denying [his] Motion for Reconsideration. . . ."). But he filed his notice of appeal on August 26, 2020, before the court denied reconsideration. *See* Aplt. App. at 243. If Efron wished to appeal the order denying reconsideration, he needed to file a new notice of appeal or amend his existing notice of appeal. *See* Fed. R. App. P. 4(a)(4)(B)(ii). Because he did neither, the order denying reconsideration is not before us. *See Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1192-93 (10th Cir. 1998) (declining to review the denial of reconsideration entered after appellant filed his notice of appeal absent an amended notice of appeal).

Efron also asserts we have jurisdiction under 28 U.S.C. § 1292(a)(1) to review the "preliminary injunction order and [the] later decision and order declining to modify [the] injunction." Aplt. Br. at 1. Efron cannot challenge the injunction, however, because he did not designate the injunction in the notice of appeal. *See* Fed. R. App. 3(c)(1)(B) (requiring notice of appeal to "designate the judgment, order, or part thereof being appealed").

Nor can Efron rely on § 1292(a)(1) to challenge the contempt order, which he calls the "order declining to modify [the] injunction," Aplt. Br. at 1, because the contempt order is not an injunctive order as contemplated by § 1292(a)(1). Although the district court did not characterize the contempt order as an injunctive order, Efron does,

5

describing it as an "*order declining to modify [the] injunction*," Aplt. Br. at 1 (emphasis added). His characterization is not determinative, however, because "[i]n resolving their appellate jurisdiction, the circuit courts have looked behind the terminology used by the parties and the district court," *Pimentel & Sons Guitar Makers, Inc., v. Pimentel*, 477 F.3d 1151, 1153 (10th Cir. 2007). We "consider the substance rather than the form of the" order to determine whether it falls within the scope of § 1292. *Id.* And the substance of this order was to hold Efron in contempt for violating the court's preliminary injunction. Simply put, the contempt order did not grant, deny, or modify an injunction as required by § 1292. *See Comptone Co. v. Rayex Corp.*, 251 F.2d 487, 488 (2d Cir. 1958) (recognizing a finding of contempt was not appealable under § 1292 because it was "not an order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or modify an injunction"). It merely enforced a previously granted preliminary injunction. *Cf. Ditucci v. Bowser*, 985 F.3d 804, 808 (10th Cir. 2021) ("This circuit has defined an injunction broadly as an equitable decree compelling obedience under the threat of contempt." (brackets and internal quotation marks omitted)).

Contrary to Efron's suggestion, the contempt order did not "declin[e] to modify [the] injunction," Aplt. Br. at 1. Efron had not asked the court to modify the injunction by motion or otherwise. The contempt order was, instead, in response to the receiver's motion asking the court to hold Efron in contempt for refusing to comply with the court's previous injunction. The contempt order concluded that Efron actually knew of the preliminary injunction provisions and that he violated the injunction by preventing the

receiver from taking control of Zurixx's assets. But the contempt order did not "alter the status of the parties" or "change[] the terms and force of the injunction." *Pimentel*, 477 F.3d at 1154 (internal quotation marks omitted). Rather, its "actual, practical effect," *id.*, was to compel Efron's compliance with the existing terms of the injunction. So Efron cannot rely on § 1292(a)(1) to appeal the contempt order.

Our jurisdiction, then, hinges on whether the contempt order is a final, appealable decision under § 1291. Efron offers no argument on this score, but the receiver contends the contempt order is not a final decision because it imposed no sanction against Efron. We agree.

Nonparties like Efron need not await entry of final judgment to appeal a civil contempt order. *See U.S. Catholic Conf. v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) ("The order finding a nonparty . . . in contempt is appealable notwithstanding the absence of a final judgment in the underlying action."). "In fact, it is that status as a nonparty which entitles him or her to perfect an appeal before a final judgment has been entered." *Concorde Res. v. Woosley (In re Woosley)*, 855 F.2d 687, 688 (10th Cir. 1988). As the Supreme Court explained more than a century ago, a nonparty contemnor may take an immediate appeal because, as a nonparty, he has no right to appeal from the entry of final judgment. *See Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 329-30 (1904).

Even so, our jurisdiction under § 1291 is limited to reviewing only "final decisions" of the district court. *See Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1275 (10th Cir. 2001) ("Generally, only final decisions of the district court are

7

appealable.").  In the context of a *party* seeking to appeal a contempt order, we have held that "in the postjudgment stage of a case, once the finding of contempt has been made and a sanction imposed, the order has acquired all the elements of operativeness and consequence necessary to be possessed by any judicial order to enable it to have the status of a final decision under 28 U.S.C. § 1291."  *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1208 (10th Cir. 1992) (italics and internal quotation marks omitted).  Thus, even at the postjudgment stage, a party must establish the finality of a contempt order by showing that the district court (1) "made a finding of contempt" and (2) "imposed specific, unavoidable sanctions." *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 370 (10th Cir. 1996).

Though we have no published authority specifically on this point, other courts require nonparties to satisfy the same two criteria—show a finding of contempt and the imposition of sanctions—to establish the finality of a contempt order.  *See Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 398 (5th Cir. 1987) (holding that the general rule for nonparties is that "a contempt decision's finality and appealability is composed of two parts:  (1) a finding of contempt, and (2) an appropriate sanction"); *see also OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 462 F.3d 87, 91-93 (2d Cir. 2006) (concluding that an order holding a nonparty in civil contempt, imposing a specific, unavoidable fine, and directing the nonparty's arrest was a final, appealable order); *Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 622 (9th Cir. 1999) ("A contempt order and imposition of sanctions on a non-party

8

for failure to obey a discovery order or subpoena is a final order for purposes of 28 U.S.C. § 1291."); 15B Charles Alan Wright et al., *Federal Practice & Procedure* § 3917 (2d ed. Apr. 2021 Update) ("A determination that contempt has occurred is not final if the question of sanctions is postponed. . . .  Finality . . . requires determination of both liability and sanction . . . .").  Once the district court makes a finding of contempt and imposes a sanction, a nonparty has an unquestionable right to appeal.  *See U.S. Catholic Conf.*, 487 U.S. at 75-76 (recognizing nonparty contemnor's right to appeal "adjudication of contempt" even without a final judgment where district court rendered finding of contempt and assessed a $50,000 daily fine for noncompliance).

Here, though, the contempt order is not a final, appealable decision because the sanction contemplated was not actually imposed.  The order found Efron in contempt, but it provided a window of time to purge the contempt either by allowing the receiver to access the office to recover Zurixx's assets or by compensating the receiver for the value of the assets.  The contempt order stated that Efron would need to pay the receiver's legal fees in connection with the contempt motion if he failed to purge the contempt by complying with the court's directives within thirty days.  And the order contained no specifics about the amount of the possible sanction—another order would have been required to set the amount of the sanction if Efron did not purge the contempt within thirty days.  Without imposition of a specific, unavoidable sanction, the contempt order was not a final, appealable decision under § 1291, and we lack jurisdiction to consider it.  *See Petroleos Mexicanos*, 826 F.2d at 398.  We

9

therefore dismiss the appeal for lack of jurisdiction.  And given the dismissal, we deny the motion for a stay pending appeal as moot.

III

This appeal is dismissed for lack of jurisdiction.  Efron's motion for a stay is denied.

Entered for the Court


Joel M. Carson III
Circuit Judge